IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| HARVEY J. KESNER | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:20-cv-551 _____ |
| _____ | ) | |
| | ) | **TRIAL BY JURY** |
| BAKER BOTTS, LLP | ) | **IS DEMANDED** |
| JONATHAN A. SHAPIRO | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

# COMPLAINT

Plaintiff, Harvey J. Kesner ("Kesner" or "Plaintiff"), by counsel, pursuant to Rule 3 of the Federal Rules of Civil Procedure, files the following Complaint against Defendants, Baker Botts, LLP ("Baker Botts") and Jonathan A. Shapiro ("Shapiro"), jointly and severally.

Plaintiff seeks (a) compensatory damages, threefold damages and punitive damages in a sum not less than **$35,000,000.00**, (b) prejudgment interest on the principal sum awarded by the Jury from August 17, 2018 to the date of Judgment at the rate of nine (9) percent per annum, (c) reasonable attorneys' fees, and (d) costs – arising out of Baker Botts and Shapiro's acts of racketeering activity in violation of Title 18 U.S.C. § 1962, violations of General Business Law § 349 (prohibiting deceptive acts or practices in the conduct of any business, trade or commerce), tortious interference with contract and business expectancies, intentional infliction of emotional distress, prima facie tort, and misconduct in violation of New York Judiciary Law § 487.

## I. __INTRODUCTION__

1.      This is a case about extortion and the illegal efforts of Baker Botts and Shapiro to extract $9,600,000 from Kesner by force, threats and intimidation.

2.      On August 17, 2018, Baker Botts and Shapiro threatened Kesner and his former law firm, Sichenzia Ross Ference Kesner, LLP ("SRFK"), with the prosecution of an action for fraud, breaches of duty, defalcations and other misfeasance.  Baker Botts and Shapiro emailed and delivered via Federal Express from California to New York a letter and 28-page lawsuit which Baker Botts and Shapiro threatened to file in three (3) days if Kesner and SRFK did not pay up.  The letter and lawsuit were part of an intentional scheme to defraud Kesner and SRFK out of money and property.  The unfounded allegations in the draft lawsuit were knowingly false.  Baker Botts and Shapiro had no present intention to file anything.  Rather, the sole purpose of the draft lawsuit was to associate Kesner and SRFK with certain "Investors" who, at the time, were being investigated criminally by the Department of Justice ("DOJ") and by the Securities and Exchange Commission ("SEC").  Baker Botts and Shapiro used the artifice of a "lawsuit" to threaten Kesner and SRFK that if they did not pay $9,600,000, Baker Botts and Shapiro would use its power, influence and political connections to implicate Kesner and SRFK in criminal wrongdoing and cause DOJ and SEC to pursue Kesner and SRFK.

3.      The draft lawsuit, *inter alia*, contained the following misrepresentations that were made for the sole purpose of extorting a settlement – a settlement that Baker Botts and Shapiro knew neither they nor their client at the time [MabVax Therapeutics Holdings, Inc. ("MabVax")] were entitled to receive:

"2.     … Rather than looking out for MabVax, the lawyers exploited their positions of trust by looking out for themselves, and for other more-valued clients who had illicit interests directly adverse to MabVax";

"3.     … Sichenzia/Kesner failed … to advise and disclose that a number of its largest investors … were acting in a manner such that federal regulators would consider the Investors to be an unlawful 'control group' for purposes of the United States securities laws … Sichenzia/Kesner *themselves* are part of the Investors";

"5.     … Sichenzia/Kesner provided MabVax with the misleading legal advice in order to protect the illicit interests of themselves and their other clients, the other Investors";

"8.     … Sichenzia/Kesner … were hopelessly conflicted given: (1) their undisclosed involvement in the matters under investigation, (2) their representation of multiple other Investors also known to be under government scrutiny, and (3) their status as an investor and a member of the same group of Investors under investigation";

"9.     … At this point MabVax cannot even determine whether its now-former counsel traded in possession of the material non-public information entrusted to them by their own public company client";

"27.     … [I]t is clear that Sichenzia/Kesner profited handsomely from its relationship with MabVax (in excess of $1,600,000), although to this day MabVax cannot determine how much more Sichenzia/Kesner profited … because the lawyers refuse to come clean";

"29.     … Investors (including Sichenzia/Kesner) have acted in such a way that, on information and belief, Sichenzia/Kesner knew … that the Company faced legal exposure because the Investors should be treated as a 'group' under the securities laws;

"41.     On information and belief, it was MabVax's own counsel at Sichenzia who gave Honig the 'head's up' that the Consent Right had terminated";

"44.   … In light of fact[s] that have come to light, it is now apparent that Schenzia/Kesner knew or should have known that they were exposing the Company to claims that its response [to regulators] was misleading or, at least, difficult to defend.   In so doing, Sichenzia/Kesner once again jeopardized MabVax in order to protect themselves and fellow Investors from regulatory scrutiny as being part of an undisclosed control group";

"47.   … [N]ow that the frailty of the of the Sichenzia/Kesner 'blocker' firewall has been revealed, MabVax no longer has confidence that the 2,628,766 shares of common stock issued to Investors via preferred share conversions are valid and also cannot be certain its previous reports regarding the number of common shares outstanding are accurate";

"54.   … Kesner repeatedly made false and misleading statements to successor counsel [Baker Botts], for example, lying about Sichenzia/Kesner's role in the underlying conduct …; mischaracterizing the circumstances of his engagement by MabVax …; inaccurately characterizing MabVax's legal defenses, including the very 'blocker' firewall theories that created the exposure in the first instance; and refusing to disclose his outside trading activity in MabVax stock."

There was no mistaking the magnitude of the threats lodged against Kesner and SRFK by Baker Botts and Shapiro.  Baker Botts and Shapiro were never interested in mediation.  As was repeated to Kesner and SRFK after August 17, 2018, if Kesner and SRFK did not pay the unjustified sum demanded ($9,600,000), Kesner and SRFK would be handed over to DOJ and the SEC, viewed as guilty by the Government, and Baker Botts and Shapiro would do everything necessary to cause the Government to expand its investigations, to bring charges against Kesner and SRFK, and to destroy their professional reputations.

4.   As a direct and proximate result of Baker Botts and Shapiro's extortionate demands, Kesner lost his partnership and employment with SRFK.  For over a year, Kesner also suffered extreme emotional and physical distress under the repeated threat that Baker Botts would use its power, Washington connections, and position of trust as MabVax's legal counsel to "turn in" Kesner to the DOJ and SEC and promote their

manufactured false account while suborning perjury by the CEO and CFO to support a prosecution of Kesner by the Government.

5.      In furtherance of the scheme to extort Kesner and SRFK, Baker Botts and Shapiro manufactured evidence to support their threats that Kesner himself[1] was part of an undisclosed beneficial ownership "group" that controlled MabVax.  Baker Botts and Shapiro also caused MabVax to make false filings with the SEC to bolster their account and press for government action.  They authored, encouraged or caused MabVax to file untrue reports with the SEC to promote the false and extortionate narrative to the DOJ and SEC that Kesner was part of a criminal enterprise group while they pressed for their illegal extortion payment.

6.      No suit was ever filed by Baker Botts and/or Shapiro.

## II.  PARTIES

7.      Plaintiff is a citizen of Florida.  Throughout the time he was extorted by Baker Botts and Shapiro, Kesner lived with his family in Fort Lauderdale.  Kesner is 62 years-old.  He graduated from the State University of New York (Binghamton) in 1979 with a Bachelor of Science in management.  He obtained his Juris Doctorate from American University, Washington College of Law, in 1982, and a Master's Degree in Business Administration-Finance from American University in Washington, D.C. in

---

[1]      In 2009/2010, Baker Botts defended Kesner's former law firm, Haynes Boone, in an action brought by Kesner for breach of his employment and partnership agreement. In that action, Baker Botts falsely claimed that Kesner/Haynes Boone owned interests in companies with several of the same investors investigated by the DOJ/SEC. Baker Botts had it out for Kesner after Haynes Boone confidentially settled with him in 2010 for an undisclosed amount. As was the case with MabVax, Baker Botts falsely and unsuccessfully argued that Kesner and the investors were a "group".  Further investigation will determine the scope and extent to which Baker Botts and Haynes Boone may be liable to Kesner for breach of the confidential settlement agreement.

1984.  Kesner has served as a director and officer of many corporations.  He is a member of the Bar of the State of New York and is licensed to practice before all State and Federal Courts in New York.  Kesner began his long career as an attorney/examiner for the SEC.  Kesner rreviewed registrations, filings and reports under the federal securities laws, public offerings, mergers, proxy solicitations and contests primarily in high technology, manufacturing and insurance industries.  He prepared agency responses to no-action letters and interpretive requests on securities law regulatory issues.  He also participated in enforcement referrals and investigations for violations of regulatory, compliance and reporting obligations.  Between 1982 and 2018, Kesner built an extremely successful practice as an attorney representing clients in securities matters.  Kesner was a partner in the New York law firm, SRFK, which consistently ranked as one of the top law firms in the nation for issuer, investor and private placement-agent legal counsel.  Kesner's practice focused on finance, mergers and acquisitions, and public company representation.  He has extensive experience in financing and counseling late-stage private companies transitioning to public company status through initial public offerings and alternative public offerings.  Kesner's expertise includes counseling already public companies in SEC filings, compliance (including Sarbanes Oxley) and regulatory reporting, registered public offerings, private offerings, PIPEs, venture capital, leveraged buy-outs, restructurings, workouts, and day-to-day operational and regulatory issues.  He served as an Arbitrator for the New York Stock Exchange ("NYSE") and the Financial Industry Regulatory Authority ("FINRA") in numerous securities and employee disputes.  He was a frequent speaker on legal developments and evolving financial products and markets and routinely provided the SEC, FINRA, Depository Trust Company (DTC) and

others' comments and advice on proposed securities rulemaking and regulations.
Plaintiff enjoyed an untarnished personal and professional reputation in the community in
which he lived and worked, with clients, with professionals at his firm, with colleagues in
the law and the securities industry, and with his many friends.  His clients were drawn
from a broad network of relationships developed over 30 years with professional and
social contacts including investment bankers, private investors, officers, directors,
lawyers, auditors and accountants who garnered high respect for his skills, judgment,
contacts and acumen.  For eight (8) years, Plaintiff earned the prestigious New York
"Super Lawyers" designation based upon peer review recommendations, an honor earned
by no more than 5% of New York attorneys, and SRFK was rated one of New York
City's best corporate law firms by Best Lawyers' magazine.

8.      Defendant, Baker Botts, is a global law firm with offices around the
world, including New York City. [https://www.bakerbotts.com/offices/new-york].  At all
times relevant to this action, Baker Botts was ready, willing, able and primed to make
good on its threats to Kesner and SRFK.  Baker Botts' "Enforcement and Investigations"
team included seasoned lawyers throughout the world, many of whom held prior federal
and state government service positions, including nationally recognized trial lawyers, a
former U.S. Attorney, a former Assistant Attorney General for the Justice Department's
Antitrust Division, a former Deputy director of the FTC's Bureau of Competition, the
former Chief of Enforcement for the Financial Industry Regulatory Authority (FINRA),
former Assistant U.S. Attorneys, state prosecutors, SEC Enforcement lawyers, and DOJ
Environmental Enforcement lawyers.  A Baker Botts attorney served as general counsel
to the SEC and seven (7) others are SEC alumni.  Baker Botts Capital Markets and

Securities Team is regaled on the firm's website for, among other things, its expertise in securities offerings, including private placements and convertible securities. [https://www.bakerbotts.com/services/practice-areas/corporate/capital-markets-and-securities-offerings].

9.      Defendant, Shapiro, is a citizen of California.  He is a partner of Baker Botts. [https://www.bakerbotts.com/people/s/shapiro-jonathan-a].

### III.   JURISDICTION AND VENUE

10.     The United States District Court for the Southern District of New York has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (Federal Question), 28 U.S.C. § 1332 (Diversity Jurisdiction) and 28 U.S.C. § 1367 (Supplemental Jurisdiction).  The parties are citizens of different States and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest, costs and fees.

11.     The Defendants are subject to specific personal jurisdiction in New York. They were physically present in New York.  They emailed and otherwise transmitted documents to New York in furtherance of the extortion scheme.  They committed multiple intentional torts, in whole or part, in New York, causing injury to Kesner in New York.  Their conduct was purposefully directed at New York and was continuous and systematic.  The Defendants have minimum contacts with New York such that the exercise of personal jurisdiction over them comports with traditional notions of fair play and substantial justice and is consistent with the Due Process clause of the United States Constitution.

12.     Venue is proper in the United States District Court for the Southern District of New York pursuant to Title 18 U.S.C. § 1965(a) and Title 28 U.S.C. §

1391(b)(2).  The Defendants reside, are found, have agents, and transact affairs in New York.  A substantial part of the events giving rise to the claims stated in this action occurred in the Southern District of New York, where Kesner suffered actual damages and special damages.

## IV.  STATEMENT OF MATERIAL FACTS

13.     On January 26, 2018, the SEC opened a formal order of investigation into MabVax Therapeutics Holdings, Inc. ("MabVax").  Pursuant to the order, the SEC issued a broad subpoena for production of documents.  The formal order and the subpoena focused on the CEO and CFO of MabVax (not on Kesner or SRFK), SEC filings and Sarbanes-Oxley certifications they signed, and potential failures by investors to report their beneficial ownership accurately, alleging violations of federal securities laws by the CEO and CFO and reporting violations by third parties.  The SEC's subpoena made no mention of Kesner or SRFK.

14.     The investors at issue in the SEC investigation became involved in MabVax starting around May 2014.  The formal order of investigation represents that the Commission had information that tends to show that from *at least June 1, 2014* MabVax committed various violations of federal securities laws.  Kesner and SRFK were not engaged by MabVax until April 2015, a fact well known to Baker Botts.

15.     Neither Kesner nor SRF played a role in developing disclosures alleged by the SEC to be false.  Prior counsel responsible for drafting SEC reporting developed all protocols for disclosure and the forms for investments in convertible preferred stock and warrants.  The form, terms and conditions for investment were produced by prior counsel and counsel to the investors.  In 2014, these prior counsel opined upon and rendered

advice to the company about effectiveness of beneficial ownership "blockers", the effect thereof, whether the securities required the investors to be treated as a "control group" and how SEC filings and reports would be made. All of the 2014 investment agreements were prepared by and handled by experienced international law firms Cooley, LLP, Schulte, Roth & Zabel, and Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C. Mintz Levin even continued as MabVax counsel and as "conflicts counsel" following Kesner's April 2015 engagement to the present.[2] Unlike Kesner and SRFK, none of these firms were threatened by Baker Botts or Shapiro.

16.     Baker Botts provided its own clients advice regarding matters involving SEC reporting and control group matters. For example, its client Cactus, Inc., in filings prepared by Baker Botts, reported that "*[t]he amounts and percentages of common stock beneficially owned are reported on the basis of regulations of the SEC governing the determination of beneficial ownership of securities. Under the rules of the SEC, a person is deemed to be a "beneficial owner" of a security if that person has or shares voting power, which includes the power to vote or direct the voting of such security, or investment power, which includes the power to dispose of or to direct the disposition of such security. Securities that can be so acquired are deemed to be outstanding for purposes of computing such person's ownership percentage, but not for purposes of computing any other person's percentage. Under these rules, more than one person may be deemed a beneficial owner of the same securities, and a person may be deemed to be a beneficial owner of securities as to which such person has no economic interest.*" Baker

---

[2]     As Baker Botts and Shapiro knew from their review of MabVax and Kesner/SRFK's files, Kesner and SRFK did not provide legal advice to MabVax on the beneficial ownership group issue. Rather, MabVax followed the advice of its prior counsel.

Botts advised on the very same rules and regulations at issue in the SEC investigation of MabVax' management and the investors. Its client, KBR, Inc., reported holdings by investors such as The Vanguard Group, Inc. and BlackRock, Inc. as follows: "*The percent of class beneficially owned is calculated based on 142,081,375 shares of our Common Stock issued and outstanding as of April 2, 2019. In addition, if a person has the right to acquire beneficial ownership of shares within 60 days ... those shares are deemed beneficially owned by that person as of that date and are deemed to be outstanding solely for the purpose of determining the percentage of Common Stock owned. Those shares are not included in the computations for any other person*".

17.     Kesner and SRFK initially represented MabVax in connection with the SEC subpoena for documents. Kesner and SRFK carefully guarded all privileged material.

18.     In May 2018, Baker Botts and Shapiro were engaged to represent MabVax in the SEC's investigation of MabVax. They knew the reporting rules of the SEC. They knew these rules exclude securities that cannot be voted or disposed of by another investor and which cannot be acquired within 60 days, as they advised their own clients on the same matters. Despite this precise knowledge, Baker Botts and Shapiro decided to falsely accuse Kesner and misrepresent that he (not Mintz, Shulte or Cooley) had provided MabVax with contrary legal advice. Baker Botts and Shapiro also took contrary positions when they advised and filed SEC reports that disregarded these well-established principles as a "set-up" to extort Kesner.

19.     After Kesner and SRFK resigned from representing MabVax, MabVax held meetings with the SEC, and provided documents and testimony to the SEC, while

Baker Botts and Shapiro continued to demand settlement payment as part of their extortion.

20.     Since 2011, reports, online news and blogging had been promoting a storyline that certain investors in MabVax were being investigated by the DOJ and SEC for their roles in alleged "pump and dump" schemes involving a multitude of other companies.  Baker Botts and Shapiro learned of these other stories and used it to support their extortion scheme.  Several articles associated Kesner with these investors since Kesner was known to have served as legal counsel to a number of the names in the articles – some investors and some issuers – having been referred by his social and professional networks over the course of more than fifteen (15) years.  In addition to the online blogs and articles, speculation about SEC investigations of the investors was fueled by a letter writing, media and harassment campaign undertaken in connection with litigation involving several of the investors, including famed Miami investor, philanthropist and billionaire Phillip Frost ("Frost").  So-called "whistleblowers" sent repeated communications to public officials, board members, officers, stockholders and others about their claims in an effort to force a large settlement from Frost.  After several years these whistleblowers sued each other unhappy with their share of the "take" from the campaign.  They revealed their exertion of a maximum pressure campaign using civil litigation, press coverage and law enforcement to exact a large settlement form Dr. Frost and other wealthy people often including Kesner in their narratives.  Rather than relying on the courts, they published and mailed false and unsupported allegations for a goal denied them in court.  Ultimately, unbeknownst to Baker Botts and Shapiro, Dan Fisher delivered to Kesner his sworn statement admitting no complicity by Kesner.  Baker Botts

however chose to rely on the unsubstantiated blogs, short seller stock promotions of false theories and a convicted felon blogger, failing completely to meet the minimal standards applicable to lawyers filing suit to conduct investigation into the veracity of the information.  Baker Botts and Shapiro made no reasonable investigation to establish the truth before presenting its draft extortion complaint threating to bring MabVax allegations against Kesner to the SEC and DOJ further lumping Kesner with Frost and others to allege a control group in their extortion ploy.[3]

21.    Baker Botts and Shapiro knew about the associations between Kesner and Frost and others that were being made in these online blogs and articles.  By reason of their representation of MabVax in the SEC investigation, Baker Botts and Shapiro also knew that the SEC was going to bring a massive civil enforcement action against Frost and other investors.  Armed with this knowledge, Baker Botts and Shapiro concocted a story about Kesner and SRFK being complicit in the alleged "illicit" activities of Frost and others.  With knowledge that the SEC was going to move against Frost and other investors, Baker Botts and Shapiro saw the opportunity to extort a settlement from Kesner and SRFK.

22.    On September 7, 2018, after a thorough, multi-year investigation, the SEC filed a civil enforcement action against Frost and other investors in the United States

---

[3]    Daniel Fisher and his lawyer, Lee Pederson, coined a phrase, "Frost gang", which the media picked up on. [https://www.miaminewtimes.com/news/miami-billionaire-phillip-frost-sued-for-additonal-stock-fraud-10971262].  Fisher and Pedersen lumped Kesner with Frost and others in complaints and letters. *See, e.g., Lee Pederson v. Philip Frost, CoCrystal Pharma, Inc., and Daniel Fisher*, Case 0:19-cv-01777-JNE-DTS (D. Minn. 2019).  In *Pederson*, it was stipulated that the SEC Office of the Whistleblower rejected the allegations and refused to proceed against any party based upon the pressure campaign, upon which Pederson turned to harassing the SEC staff.

District Court for the Southern District of New York (the "SEC Action") for activities spanning a period of five (5) years from 2013 to 2018. The SEC's complaint alleged as follows:

> 1.      This case involves three highly profitable "pump-and-dump" schemes perpetrated by Honig, Stetson, Brauser, O'Rourke, Groussman, and Frost, and their entities GRQ, SCI, Grander, HSCI, Melechdavid, ATG, Opko, FGIT, and Southern Biotech from 2013 through 2018 in the stock of three public companies (Company A, Company B, and Company C) that, while enriching Defendants by millions of dollars, left retail investors holding virtually worthless shares.

After reviewing over 1,200,000 records related to the allegations in the complaint, the SEC filed an amended complaint against the defendants in the SEC Action.[4]

23.      The SEC did not bring any charges against Kesner or SRFK initially nor a year later when it filed the amended complaint.

24.      The SEC did not bring any charges against MabVax, its CEO or its CFO and did not mention MabVax in its complaint.

25.      The SEC did not name Kesner as a relief defendant.[5]

26.      The SEC did not otherwise suggest in any way that Kesner was part of a "control group" or that he had engaged in any wrongdoing.

---

[4]      The docket in the SEC Action reveals the DOJ has been investigating the defendants in a parallel criminal proceeding.

[5]      In the context of an SEC enforcement action, a relief defendant "is a person who holds the subject matter of the litigation in a subordinate or possessory capacity as to which there is no dispute." *SEC v. Cherif*, 933 F.2d 403, 414 (7th Cir. 1991).

27.     Kesner and SRFK have never been informed that they are a target or subject of any investigation or lawsuit and neither has been named or contacted by the SEC, the United States Attorney, or any other regulator related to these matters.

28.     There is no information – not a scintilla of evidence – anywhere from which anyone could conclude or infer that any department or agency of the United States believed that Kesner had engaged in any wrongdoing in the case.

29.     Baker Botts and Shapiro knew that there was no evidence linking Kesner or SRFK to any "pump and dump" scheme.

30.     Baker Botts and Shapiro knew that there was no evidence that Kesner and/or SRFK were part of any "control group" of the companies, including MabVax, at issue in the SEC Action.

31.     Baker Botts knew (a) that most of the investors first invested in MabVax in 2014, at least a year before Kesner's hiring, (b) that most of them did not invest in May 2015 as falsely alleged, (c) that they did not know each other and were independent funds or investors, and (d) that even when the investors (defendants in the SEC Action) invested, SEC reporting of ownership and negotiation of terms was under the guiding light of other counsel, namely Mintz Levin, Schulte Roth and Cooley, who had advised MabVax and the investors of their reporting obligations – not Kesner.

32.     In spite of the public record and evidence, Baker Botts and Shapiro persisted in their efforts to extort money out of Kesner and SRFK.

**Baker Botts And Shapiro Instruct Their Client to "Manufacture" Facts And File False SEC Filings To Create The Illusion Of A "Control Group"**

33.     Baker Botts and Shapiro knew that the SEC and DOJ had no claims to assert against Kesner.  Baker Botts and Shapiro also knew there was no evidence Kesner was part of a "control group" of MabVax under the Federal securities laws.

34.     In furtherance of the plan of extortion, Baker Botts and Shapiro took a series of actions designed to *create* a malpractice claim against Kesner and SRFK, to tie Kesner to the MabVax investors under investigation, and to threaten to assist the Government to expand its investigations.  Baker Botts and Shapiro (a) directed testimony by MabVax management to support the SEC theories against the investors; (b) went to the extreme and unprecedented length of waiving traditional protections, such as attorney-client privileges between Kesner and his former client Mabvax, in advance of their soon to be scheduled depositions and in document production; and (c) directed MabVax to file inaccurate SEC reports to manufacture a "theory" that they would use against Kesner in asserting their settlement demands – that is, that all 69 investors (including Kesner) actually constituted an illegal, unreported "control group" the SEC should pursue, who repeatedly violated the law, engaged in illegal pump and dump schemes, failed to disclose their control in violation of Federal securities laws, and, in Kesner's case, committed fraud and malpractice.

35.     Baker Botts and Shapiro engaged in this action despite the fact (a) that the investor-defendants in the SEC Action first invested in MabVax long prior to the March 2015 date, when the balance of the investors claimed to be a "group" (including Kesner) made their investment, (b) that beneficial ownership blockers prevented voting control over MabVax for more than the requisite 60 day period required by SEC rules (the same advice Baker Botts gives its own clients) that avoid reporting beneficial ownership, and

(c) that the investors invested separately and that many of them had no knowledge of each other and never met.  Baker Botts and Shapiro also ignored emails and documents that MabVax was fully aware and approved investments by Kesner, emails from the CFO that required him to invest more to not lose his investment, engagement letters that approved share ownership, express conflicts waivers and executed agreements that provided for payment of legal fees in shares of stock.  Baker Botts and Shapiro spent $1 million in legal fees, but failed to acknowledge any of these writings, instead using their position to criminally extort Kesner.

36.     In support of the extortionate "theory" presented in its settlement demands, Baker Botts and Shapiro went so far as to advise MabVax to file untrue, false and material misleading statements and reports with the SEC, repudiating the correct filings previously made, committing malpractice that led to the demise of its client, its delisting from NASDAQ and, ultimately, its bankruptcy filing.  On May 20, 2018, acting on advice from Baker Botts and Shapiro, MabVax filed a Form 8-K with the SEC that repudiated three (3) years of SEC filings and financial statements:

---

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
Washington, D.C. 20549

**FORM 8-K**

CURRENT REPORT
PURSUANT TO SECTION 13 OR 15(d)
OF THE SECURITIES EXCHANGE ACT OF 1934

Date of Report (Date of earliest event reported): May 20, 2018

**MABVAX THERAPEUTICS HOLDINGS, INC.**
(Exact name of registrant as specified in its charter)

. . .

Item 4.02    Non-Reliance on Previously Issued Financial Statements or a Related Audit Report or Completed Interim Review.

    To the extent required by Item 4.02 of Form 8-K, the disclosures in Item 8.01 of this Current Report on Form 8-K are hereby incorporated by reference.

---

37.     In directing, aiding and abetting MabVax's securities fraud, Baker Botts ignored fifty (50) years of SEC regulations, case law and practice to have MabVax incorrectly report that because of the "group" (consisting of up to 69 persons, including Kesner), MabVax's reported financial statements and votes were incorrect and could not be relied upon by investors or regulators.  A beneficial ownership "group" under Federal securities laws is a defined and well-established technical term used in SEC Rules and Regulations.  Baker Botts and Shapiro intentionally ignored the law.  In this manipulated filing, Baker Botts and Shapiro wrongly placed Kesner within the "group".[6]  Baker Botts and Shapiro threatened to produce its findings on this matter to the SEC through the draft complaint.

38.     Baker Botts and Shapiro's draft complaint threatened to identify Kesner as part of the "group" that had violated securities laws in numerous ways.  The plain

_____

[6]     After May 20, 2018, MabVax continued to file false statements with the SEC that were engineered by Baker Botts and Shapiro for the purpose of extorting money and property from Kesner and SRFK.  MabVax repeatedly made the following statements in its SEC filings:

> "The Company has determined that, based on the facts and circumstances now before it, the beneficial ownership interests of members of the Aggregated Investors should be aggregated in order for the Company to comply with its reporting obligations.  As of November 19, 2018, and absent a change in the facts and circumstances known by the Company, the Company will presume the Aggregated Investors beneficially own their shares of our capital stock as a group when construing the blocker provisions of our certificates of designation for all series of our preferred stock and when effecting conversions.  Regarding matters in which our preferred holders are entitled to vote their shares on an as converted basis, we will record their votes after taking into account any applicable blocker provisions per the terms of the certificates of designation, again aggregating the beneficial ownership of the Aggregated Investors based on the facts and circumstances known to the Company as of any applicable record date."

[https://www.sec.gov/Archives/edgar/data/1109196/000165495418013055/mbvxs1_nov5 2018.htm].

meaning of the document was that if Kesner and SRFK did not settle and pay the exorbitant demand, Baker Botts and Shapiro would bring the allegations to the attention of the DOJ and SEC.  Baker Botts and Shapiro threatened that the complaint would bolster the SEC's existing charges and place Kesner in the center of a "group" in activities not only involving MabVax, but involving numerous other companies the same investors had funded over the years.  Baker Botts threatened to hand over Kesner to the SEC, if the matter was not settled, as the lynchpin behind all of the investors' alleged pump and dump and stock manipulations.  Baker Botts and Shapiro represented that Kesner would be charged by the SEC, and that they would urge the SEC to expand its claims to more companies alleged to have been manipulated, and where Kesner had served as counsel.  Baker Botts and Shapiro presented Kesner with the threat that he would be cast as the brains behind the investors' pump and dump schemes.

39.     Baker Botts and Shapiro believed Kesner was easy prey.  To give up Kesner to the SEC as the culprit, all Baker Bots and Shapiro had to do was get MabVax to make filings that supported the SEC theory that the investors were part of a beneficial ownership "group", and add Kesner to the "group" – just like others had when alleging that Kesner was part of the "Frost gang".  However, Baker Botts and Shapiro's extortionate acts are illegal and unethical.  Baker Botts and Shapiro's actions violated the Rules of Professional Responsibility applicable to Baker Botts and its attorneys.

40.     Baker Botts and Shapiro were engaged by MabVax after the company formed its special committee in May 2018.  In spite of its duty to _defend_ MabVax from the very subpoenas that required the engagement of counsel in the first place, Baker Botts and Shapiro did the opposite.  Baker Botts aided and abetted MabVax management in the

creation of a story about Kesner and SRFK that Baker Botts and Shapiro intended to use to extort money and property from Kesner and SRFK.  Shortly after Baker Bott's hiring, the entire special committee and every independent director resigned, resignations they were forced into submitting by similar threats likely made by Baker Botts in light of their purported association to Frost and other investors, while nonetheless being fully qualified and independent and having started to investigate management's alleged malfeasance as alleged by the SEC in its formal order of investigation.  This "Saturday Night Massacre" left the accused executives in their positions removing the very body charged with investigating them irreversibly conflicting Baker Botts which then turned to its illegal acts protecting, rather than investigating, David Hansen and Gregory Hanson, the CEO and CFO of MabVax who were, in fact, under investigation.  Upon information and belief, Baker Botts also threatened to include committee members in its referral to authorities should they not resign and give Baker Botts unfettered access to run MabVax and manipulate management into reckless acts, false SEC filings, perjury, extortion and other activities which Baker Botts' as architect designed  in order to entrench and protect these executives rather than assuring their investigation and potential removal from office.

41.     On September 20, 2018, a Delaware Court of Chancery *rejected* entirely the repudiation of MabVax's prior SEC filings and the accounting that Baker Botts insisted was required to reflect the actions of the "group" of 69 persons.  The Court confirmed the validity and accuracy of the original three (3) years of filings made by MabVax with the SEC.  However, the damage was done.  As a result of Baker Botts' and Shapiro's scheme and misdirection, NASDAQ delisted MabVax because of the

inaccurate filings, investors refused to fund new capital needs, and the company ended up in bankruptcy within a year. Baker Botts and Shapiro sought to use the fraudulent draft complaint to shift the blame from themselves to Kesner and SRFK.

42. Kesner and SRFK rejected Baker Botts and Shapiro's extortionate settlement demands.

43. Baker Botts and Shapiro never pursued the draft complaint because the allegations lack evidentiary support, were not supported by the law, and because they feared charges of criminal and civil extortion and ethics complaints.

44. Baker Botts and Shapiro's threats were explicit and implicit – to ruin Kesner, to turn Kesner and SRFK over to the SEC and DOJ in the investigations that Baker Botts and Shapiro knew existed, and to encourage the SEC/DOJ investigates to be expanded to other issuers.

45. Baker Botts and Shapiro spent over $1 million in furtherance of the scheme to extort Kesner and SRFK. Baker Botts is the second largest creditor in MabVax's bankruptcy. MabVax generates scant revenues and Baker Botts knew it could never be paid by MabVax, either before its Chapter 11 bankruptcy filing or afterwards. Baker Botts never intended to collect any fees from MabVax. Rather, Baker Botts and Shapiro know that to be paid they would have to get payment from Kesner and SRFK and set out to do so via a fabricated complaint it never intended to file.

46. In September 2018, a Boston, Massachusetts, law firm, Block & Leviton LLP, filed a malpractice action in California Superior Court against SRFK, Kesner and

virtually every SRFK attorney/timekeeper that worked on MabVax. That action is being aggressively defended.[7]

47. Baker Botts and Shapiro's actions were illegal as a matter of law.

48. The draft complaint and related communications constitute criminal extortion. Baker Botts and Shapiro, with intent to obtain money or property from Kesner and SRFK by settlement, sent or delivered to Kesner and SRFK the draft complaint and expressed or implied that Kesner and SRFK would face criminal prosecution and civil liability if they did not pay Baker Botts. Baker Botts and Shapiro attempted to obtain a civil advantage – a $9,600,000 settlement – by the wrongful use of actual or threatened force, violence or fear.

49. New York Penal Law § 155.05(2)(e) criminalizes the conduct engaged in by Baker Botts and Shapiro. That State statute provides as follows:

"2. Larceny includes a wrongful taking, obtaining or withholding of another's property, with the intent prescribed in subdivision one of this section, committed in any of the following ways: …

(e) By extortion.

A person obtains property by extortion when he compels or induces another person to deliver such property to himself or to a third person by means of instilling in him a fear that, if the property is not so delivered, the actor or another will:
…

(ii) Cause damage to property; or
(iii) Engage in other conduct constituting a crime; or
(iv) Accuse some person of a crime or cause criminal charges to be instituted against him; or

---

[7] *MabVax Therapeutics Holdings, Inc. v Sichenzia Ross Ference LLP et al.*, Civil Action No. 3:18-cv-0249-WQH-MSB (S.D. Cal).

(v)     Expose a secret or publicize an asserted fact, whether true or false, tending to subject some person to hatred, contempt or ridicule; or

…

(vii)     Testify or provide information or withhold testimony or information with respect to another's legal claim or defense; or

(ix)     Perform any other act which would not in itself materially benefit the actor but which is calculated to harm another person materially with respect to his health, safety, business, calling, career, financial condition, reputation or personal relationships."

50.     Title 18 U.S.C. § 875(d) also criminalizes the conduct engaged in by Baker Botts and Shapiro.  That statute provides as follows:

"(d)     Whoever, with intent to extort from any person, firm, … or corporation, any money or other thing of value, transmits in interstate … commerce any communication containing any threat to injure the property or reputation of the addressee or of another … or any threat to accuse the addressee or any other person of a crime, shall be fined under this title or imprisoned not more than two years, or both."

Baker Botts and Shapiro's threat to cause economic loss and reputational harm to Kesner and SRFK was wrongful because Baker Botts and Shapiro used the threats to obtain property to which they were not entitled.   Baker Botts and Shapiro are guilty of extortion because they sought money or property to which they did not have, and could not reasonably believe they had, a claim or right.  Baker Botts and Shapiro's threats had no nexus to a plausible claim of right.  In *United States v. Michael Avenatti*, as here, such illegality has been applied to attorney settlement demands and letters. *See, e.g., United States v. Michael Avenatti*, Case 1:19-cr-00373-PGG (S.D.N.Y.); id. *United States v. Litzenburg*, Case 3:19-mj-00069-JCH (W.D. Va.).  Taking a page from lawyer Avenatti's playbook, Shapiro found a vulnerable company he would seek to convince to let him direct an "internal investigation", and would run up millions in legal fees.  As reported in the New York Times article cited by prosecutors in New York in their case against

Avenatti as he prepared to extort Nike – "When a corporation is caught in a government investigation, the legal fees can quickly exceed $100 million – and that's before the lawsuits even begin."[8]  Shapiro bulked up on investigation costs that he knew could not be paid by MabVax and desperately motivated to get paid turned to illegal extortion as a motive to protect his own job and position having no other way to get paid.

51.     Title 18 U.S.C. § 1951 also criminalizes the conduct engaged in by Baker Botts and Shapiro.  That statute provides as follows:

"(a)     Whoever in any way or degree obstructs, delays, or affects commerce … by … extortion or attempts … so to do … shall be fined under this title or imprisoned not more than twenty years, or both.

(b)     As used in this section-
…

(2)     The term 'extortion' means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear…."

In carrying out the plan to extort a settlement from Kesner, Baker Botts and Shapiro used wrongful means to achieve a wrongful objective.  Baker Botts and Shapiro had no lawful claim to the money they sought.  Backed by manufactured evidence, Baker Botts and Shapiro used the threat of bad-faith litigation to exploit Kesner's fear of criminal prosecution, civil liability and economic loss into a settlement.

52.     Baker Botts and Shapiro's actions between 2018 and 2019 were fraudulent and criminal.  On May 29, 2018 Shapiro sent a letter to Kesner: "Thank you for our meeting last week, and for your commitment to assist the transition of [SRFK] former legal representation of [MabVax] to successor counsel.  As discussed, Company counsel

---

[8]     [https://dealbook.nytimes.com/2012/03/05/the-mounting-costs-of-internal-investigations/].

with respect to the pending SEC investigation is our office, Baker Botts L.L.P" and with respect to corporate and transactional matters is Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C."   Up to that point Kesner and SRFK assisted the board and company in timely producing documents to the SEC, reviewed privileged documents to be withheld from the SEC to protect the client, and provided support to the Board for their investigation of management and formation of a special committee.   Baker Botts misrepresented to Kesner and SRFK that they needed documents and information from Kesner and SRFK to answer the SEC subpoena.   Kesner and SRFK complied with Baker Botts and Shapiro's request in good faith.   Baker Botts and Shapiro concealed the fact that they intended to use the documents to craft a complaint against Kesner and SRFK that they would use to extort money and property from Kesner and SRFK.   Baker Botts and Shapiro utilized Kesner and SRFK's attorney files and immediately made demand for $9,600,000 under the threat of creating a dust storm of controversy that would cast a cloud of illegal complicity by Kesner over matters already under investigation by the SEC and DOJ in their ongoing cases.   Baker Botts drafted the complaint from a trove of personal, confidential and privileged internal emails and correspondence irrelevant to the merits of any matter, liberally quoting internal firm communications and emails to embarrass and bully – despite having been repeatedly advised in writing and orally, that as co-counsel they were duty bound to review and to protect all privileged and confidential materials from disclosure – instead providing a trove of unreviewed privileged documents to the SEC and using them to craft their unfiled threatened demand letters and complaint.

53.     Kesner suffered damage and incurred substantial loss as a result of Baker

Botts and Shapiro's implementation and continuation of the extortionate scheme.

### FIRST CAUSE OF ACTION – 
### FEDERAL RICO

General Allegations -

54.     Kesner restates paragraphs 1 through 53 of this Complaint, and

incorporates them herein by reference.

55.     Baker Botts and Shapiro were part of an enterprise consisting of a union or

group of individuals with a common purpose that are associated in fact.

56.     The enterprise has as its purpose extortion, the relationship of the parties

consists of informal and formal agreements and understandings to cause harm, threaten,

embarrass and defame through unsophisticated, brutal and unlawful means, with

longevity - a scheme that commenced in 2014.

57.     The members of the enterprise are manifold, they share a common

hostility towards anyone who at any time was associated (socially, economically or

professionally) with certain persons coined the "Frost Gang", whose common purpose

was to enhance their reputation and seek extortion payments, rewards and compensation

from illegal actions and threats by means of  their concerted actions and conspiracy.

Baker Botts additionally conspired with MabVax' management to deflect federal

investigations directed at them.   They threatened to deflect the investigations onto

plaintiff should he not pay up.

Jonathan Shapiro and Baker Botts Join the Ongoing RICO Enterprise -

58.     Baker Botts and Shapiro joined the enterprise in 2018.  They extended its

reach to include MabVax.  They followed identical tactics employed since 2014.  The

purposes of the enterprise are to collect sums from companies, entities and professionals who were associated with Dr. Philip Frost and additional persons who developed investment strategies with him. Dr. Frost and others invested in MabVax in 2014-2015. Plaintiff served as legal counsel to MabVax and to another company Biozone Pharmaceuticals, Inc., (later renamed Cocrystal Pharmaceuticals ("COCP")), caught in the enterprise's snare. He garnered the attention of the enterprise because of those roles. In 2018 Baker Botts and Jonathan Shapiro made false claims concerning plaintiff as had been made in 2014 against plaintiff concerning Biozone/COCP.

The Case Parallels Between 2014 and 2018 -

59. The cases have many similarities. Each company had counsel with unpaid amounts claimed to be owing by the company. Each company claimed it was the victim of abuse by its Frost investors. Each company threatened to publicize, encourage law enforcement action and bring civil suit. Each company had no evidence of wrongdoing.

60. Lee Pederson, Esq. is an attorney who worked for Biozone/COCP. Lee Pederson founded the enterprise in 2014. He knew there was no basis to accuse the investors in Biozone/COCP but instead Pederson lodged a multitude of charges, solicited media, filed whistleblower claims and civil suits. With regard to plaintiff, he alleged a multitude of unproven and imagined misdeeds as counsel to Biozone/COCP. He acknowledged in later court filings that he and others received payments from Biozone/COCP as the enterprise successfully executed its purpose.

61. Plaintiff also became co-counsel to MabVax Therapeutics Holdings, Inc. ("Mabvax") where he assisted the law firm of Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C. ("Mintz Levin") on corporate matters. Upon his engagement in 2015, he

disclosed to management that he had previously represented or knew several of its Frost investors that backed such company since 2014 and that he would not assist the company when it came to negotiations with them or in disputes.  At several junctures during the engagement, Mintz Levin was called upon to handle matters related to the Frost investors and plaintiff recused himself.  In 2018, Baker Botts was employed to assist MabVax in responding to an SEC subpoena and investigation of management. MabVax became indebted to Baker Botts over a few short months in an amount that exceeded $1 million. Unpaid, Baker Botts charged plaintiff with unproven and imagined misdeeds ignoring numerous voluntary disclosures, recusals and Mintz Levin involvement and demanded plaintiff pay $9.6 million which plaintiff refused to pay.

Tactics Developed in 2014 Are at the Center of the Baker Botts RICO Violation -

62.     Tactics utilized against the "Frost gang" have been employed across a multitude of companies.  Starting with Biozone/COCP Lee Pederson lumped plaintiff with the Frost gang garnering media attention, law enforcement referrals, and lawsuits. Utilizing false statements and imagined injury Pederson and his cohorts sought to force the Frost investors to pay up.  Pederson and the enterprise attacked plaintiff too merely for representing Biozone/COCP and viciously attacked plaintiff publicly for knowing the investors making not a single specific claim of any improper act.  Lee Pederson caused many articles and stories to be published falsely associating plaintiff with the claim that the investors had broken the law although later admitting he had no proof of any laws broken.  He continues to defame and secure writers to defame plaintiff through the filing of this complaint.

63.     Baker Botts, was hired by MabVax to respond to an SEC subpoena in an investigation by the government of the actions of the executives of MabVax (David Hansen and Gregory Hanson).

64.     The 2014 Biozone/COCP claims made against plaintiff were made through false reporting, character assassinations to reporters, letter writing to boards of directors, solicitation of regulators to sue plaintiff, threats and intimidation.   Once Shapiro/Baker Botts became involved, they joined the enterprise and they adopted tactics that included threatening to report false information about plaintiff to regulators and divert regulatory scrutiny away from MabVax management should he not pay.

65.     Dr. Frost and other investors invested over $30 million in Mabvax.  Baker Botts and Shapiro cast plaintiff as a principal actor in a MabVax "pump and dump" scheme and sought $9.6 million from plaintiff and his firm.  Shapiro/Baker Botts led this campaign through false and unproven allegations in order to recover their unpaid legal fees, uncollectible after MabVax filed for bankruptcy.

66.     Positioning themselves as a creditor they hold the second largest debt owed by MabVax.   However, it was Shapiro/Baker Botts own actions that caused MabVax to file for  bankruptcy.  MabVax viability as an going concern was destroyed beyond repair by the actions of Baker Botts and management as they sought to eliminate the criticism of the investors over the waste and mismanagement by Hansen and Hanson that led to never-ending calls for more money, false promises and lack of results in the development of potentially life-saving technologies the investors had supported over 5 years' time.  In their quest to cut ties to the investors who were calling for their heads Baker Botts stepped over the line as counsel desperate to collect over a million in fees

and began to manage the company – to its ultimate demise.  The encouraged business decisions through improper and incorrect legal advice so that they could potentially recover from plaintiff and the investors sufficient amounts to recover their fees.  They provided improper legal advice as counsel to the company and then forced the resignation of the board of directors.  Rather than resigning to avoid an unwaivable conflicts of interest, they began working to defend management from the SEC investigation, the very investigation that the SEC was pursing against management and which the Board of Directors had hired Baker Botts.   The principal means of doing this was to deflect the investigation onto plaintiff and MabVax' investors.  The improper legal advice resulted in delisting from NASDAQ, the unwillingness of Dr. Frost and other existing investors to continue to provide financial support, the cloud of illegalities dissuading any new investment and the loss of 100s of millions of dollars of market value.  All this to allow Baker Botts to improperly run up millions in legal fees to be paid.

Baker Botts makes demand for $9.6 million from plaintiff -

67.    Baker Botts demanded from plaintiff extortion in the amount of $9.6 million - the exact amount claimed in the bankruptcy[9] to be the value of shares issued when MabVax sought waivers to certain restrictions for additional financings.  This so-called "consent right" was a material part of the negotiations with the Frost investors when soliciting their investment and was a lawful contractual covenant entered into willingly between investors and MabVax in order to secure needed investment capital. The terms were entered knowingly, willingly and with each party represented by its own

---

[9] "*The statements made herein regarding the Alleged Bad Actors are based entirely on the allegations in the Alleged Bad Actor Litigation and Sichenzia Litigation.  As such, they remain only allegations.*"  See Second Amended Disclosure Statement and Joint Plan of Liquidation for Debtors filed January 9, 2020 Chapter 11 Case No. 19-10603-JTD, *In re; MabVax Therapeutics, Holdings, Inc., et al., debtors* (D. Del), at 18.

sophisticated counsel in exchange for their investments. Notably, the consent rights and all investor waivers were exclusively negotiated for MabVax by Mintz Levin. Shapiro/Baker Botts ignored the inconvenient truth that Mintz Levin (not plaintiff) rendered all legal advice when it involved the investor negotiations and lied when it suited their need to cast Kesner as acting improperly to favor the investors and refer the matter to the authorities hoping that a federal investigation of plaintiff would ensue on which they would piggyback in order to exact their payment sum. Shapiro/Baker Botts hoped for a federal investigation that would repeat their allegations to be followed by their lawsuit so that the government would do the heavy lifting necessary to prove malfeasance, and Kesner's insurance would thereupon readily pay Baker Bott's demands. However, none of this transpired and the SEC investigation was not expanded at Baker Botts behest. Plaintiff was not named in any investigation or SEC lawsuit. Baker Botts fabricated theories have been utterly rejected. This did not stop Shapiro/Baker Botts from continuing to falsely state Kesner was responsible to management of MabVax, the SEC regulators investigating management, the press, bankruptcy lawyers[10] and threatening plaintiff to demanding cash payment of $9.6 million. This despite a trove of documents, records and witnesses which prove plaintiff recused himself entirely from such matters when serving as MabVax co-counsel with Mintz Levin.[11]

68.     The documentation showing that plaintiff did not render advice on the consent right is in the possession of MabVax, Mintz Levin, the investors and their counsel and is extensive. MabVax' CFO Greg Hanson is known to have sent plaintiff emails in December 2015 asking for assistance on the consent right which were answered

---

[10] Id. at pps 17-19.
[11] Mintz Levin is also a significant creditor in the MabVax bankruptcy with a claim of $187,000 in the bankruptcy.

by plaintiff informing him that plaintiff's firm's determined to decline to provide legal advice on the existence of the consent right. Plaintiff telephonically informed Gregory Hanson and confirmed the position in writing to Gregory Hanson, CEO David Hanson, and in-house counsel Warner Broadus, Esq. Plaintiff also wrote that he would instruct lawyers on his staff to not address consent questions from the company[12]. Plaintiff insisted he be left off of all communications regarding the matter entirely, which request was honored by Mintz Levin and the investors. This was not the only time plaintiff declined to provide legal services to plaintiff and required Mintz Levin handle matters involving Frost and investors. Plaintiff wrote to both the investors themselves and David Hanson requesting to be excluded from emails between them when disputes erupted insisting the matters by handled entirely by Mintz Levin. Mintz Levin (not plaintiff) resolved all aspects of the consent right, the payment of the consent shares in stock to the investors and the rendering of legal opinions. Contrary to its claims, MabVax raised $2.8 million from an investment firm "Oxford Finance, LLC" in 2016 and Mintz Levin issued its legal opinion that the investment did not conflict with the consent right, having obtained all required consents from investors. This did not dissuade from their extortion demands that plaintiff pay $9.6 million for improper advice concerning the consent right or face prosecution, embarrassing press accounts, and meritless lawsuits.

Baker Botts Relies only upon self-serving oral statements from David Hansen and Gregory Hanson –

69.    Without any supporting documentary or factual evidence, Shapiro/Baker Botts relied only on untrustworthy oral statements revealed in MabVax interrogatories,

---

[12] At that time many lawyers at the firm were working with MabVax employees who needed to be informed of the firm's determination, several of which, unbeknownst to Plaintiff, already were being solicited for their opinion by MabVax management separate from plaintiff.

Ignoring the dozens or hundreds of written documents and emails in their possession collected in response to the SEC subpoena and otherwise, Shapiro/Baker Botts crafted the draft complaint use to attempt to extort plaintiff. Shapiro/Baker Botts/Shapiro made their terms clear – settle or we will get the SEC to take you down. Without any action whatsoever thereto being taken by the SEC against MabVax, its officers or directors, or against plaintiff or his law firm incorporating any of the Shapiro/Baker Botts charges that an undisclosed group of Frost investors controlled MabVax who failed to file their own SEC ownership reports[13], that MabVax incorrectly calculated beneficial ownership and permitted blockers to be evaded by investors who were a group based upon alleged improper legal advice from plaintiff, Baker Botts nonetheless made these allegations the central issue in the draft complaint, thereafter directed counsel for the bankrupt company to issue bankruptcy court filings repeating these allegations[14], informed the SEC and possibly DOJ, and upon information and belief communicated such claims to reporters. Another law firm Block Leviton, LLP, likewise was fed this trove of lies by Shapiro/Baker Botts all to unlawfully threaten plaintiff with civil and criminal prosecution, embarrassment and litigation unless he paid extortion that would allow Baker Botts and Shapiro, and thereafter Block Leviton, LLP, to recover their fees. Block and Leviton is pursuing claims against plaintiff based on the information provided by Baker Botts and in 16 months has failed to produce documents in discovery to plaintiff. As noted in plaintiff's motion to compel production "[Block and Leviton] filed that case sixteen months ago in September 2018, and thus far has failed to produce any documents

---

[13] Investors, not companies, are required to calculate and report their own beneficial ownership holding over 4.9%, including the effect of beneficial ownership blockers. There also is no private right of action against companies under Section 13 of the Securities Exchange Act of 1934.
[14] See note 9 *supra.*

that support its allegations and it appears [Block and Leviton] is not even searching for documents that support its case. Kesner is entitled to know the basis for [Block and Leviton's clients'] allegations.

70.     Baker Botts and Shapiro manipulated and contorted the entirety of the bankruptcy process once MabVax filed for Chapter 11 bankruptcy to gain advantage for themselves and co-conspirators at Block Leviton who joined with Baker Botts extending the enterprise into the Chapter 11 proceedings.  They sought to convinced the court to allow them to earn legal fees to the detriment of the actual creditors of MabVax.  This was achieved by continuing their false and fraudulent narrative and misrepresenting material facts – the same and other facts alleged in the Baker Botts unfiled complaint - to the bankruptcy court and interested parties in the case who, to date, have failed to be provided with accurate and objective information so that they may object to any claims submitted by Baker Botts or Block Leviton for payment of fees and assert claims against such firms for malpractice and fraud for their acts.   Not a single element of proof, not a scintilla of actual evidence, supports any of the allegations or claims in the bankruptcy statements repeated by Baker Botts and Block Leviton, the participants in this illegal racket, a RICO enterprise.   Rather than pursuing management (Hansen, Hanson, Broaddus) who actually defrauded the investors (including Frost) in $30 million of MabVax securities sales, the investing public of millions more, and who while serving as executives engaged in illegal personal stock sales, who knew, themselves, that funds for the company's business were being diverted to other purposes, to lawyers (who represent a large percentage of the creditors in the bankruptcy) who served the management's bidding to entrench themselves and derail a looming investor result,   who failed to

disclose the technology was failing and not being actively or properly developed as promised to investors. All of this will be proven by plaintiff through evidence that MabVax made false statements in numerous SEC filings, business plans, investor presentations and media reports. Baker Botts, LLP/Jonathan Shapiro and Block Leviton, LLP/Jason M. Leviton, Esq., Joel A. Fleming, Esq. convinced the bankruptcy court through false representations and statements that the investors and plaintiff should be pursued – while the investors had already lost $30 million of their invested capital, and plaintiff provided none of the improper advice or leaning toward investors that he is accused of throughout the campaign. They are pursuing 69 largely unrelated persons many of which do not even know other claiming the company was somehow forced to enter undesirable contracts that violated the law in some unknown and unproven way – after the fact – although ably represented by Mintz Levin, a major highly regarded national law firm fully capable of discerning "group" issues and interpreting the effects of beneficial ownership "blockers". A firm that represented the company since 2014, *nearly a full year* before plaintiff started as counsel, on these very issues. The interested parties in the bankruptcy, injured by this fraud include the committee representative of secured and unsecured creditors and shareholders. The committees should be demanding claims be asserted against the bad actors - Baker Botts, Block Leviton, Mintz Levin, David Hansen, Gregory Hanson, Warner Broaddus, Esq., and others, for causing the bankruptcy through their illegal actions and misrepresentations, for violations of the rules of professional responsibility and breaches of fiduciary duty. An impartial and neutral overseer should be appointed that will end the domination and control of the estate and its assets by David Hansen, Gregory Hanson and Jonathan Shapiro.

<u>Baker Botts' Services Were not Routine Legal Services – They Repeatedly Violated the Rules of Professional Responsibility, Revealed Confidential and Privileged Client Information, Rendered Negligent and Incorrect Legal Advice and Secured Board of Director-like Control over Decisions Made by MabVax After Overseeing the Board's Resignation –</u>

71.    Baker Botts and Shapiro did more than perform routine professional services for MabVax.  Their acts went further than that by:

1)  intimidating the entire independent board of directors investigating management after claims were made against David Hansen and Gregory Hanson by the SEC;

2) forcing every independent director into resigning and terminating the special committee;

3) conspiring with management under investigation and causing the rendering advice causing members of management to breach their fiduciary duties;

 4) violating the Code of Professional Responsibility applicable to lawyers by the foregoing actions and also by defending targets of the SEC investigation after previously having been engaged as its counsel to respond to the SEC subpoena and defend MabVax

5) advancing the interests of Hansen and Hanson to maintain their employment and positions with MabVax and derail investor concerns by designing and implementing "anti-takeover" protection by litigating with investors and seeking to cause agencies and regulators to investigate the investors, all undisclosed tactics required to be disclosed in SEC filings and reports under the Williams Act and other statutes, rules and regulations,

6) failing to protect the investing public;

7) committing numerous additional violations of the Code of Professional Responsibility such as representing members of management simultaneously with the client that had engaged them to respond to SEC inquiries, misleading counsel and violating their duties to the California bar, misleading counsel, the bankruptcy court and other courts, violating confidences and failing to protect attorney-client and work product privileged information to the detriment of MabVax;

8) acting dishonestly to co-counsel with the intent and purpose of extorting $9.6 million instead of honestly and faithfully assisting co-counsel with its efforts to timely and accurately respond to the pending SEC subpoena and inquiry;

9) aiding and abetting management in the filing of false and misleading SEC filings and reports containing untrue statements of material fact and material omissions in violation of Section 10 and Rule 10b-5 promulgated under the Securities Exchange Act of 1934, among other statutes, rules and regulations;

10) making false allegations of undisclosed "groups" and investor collusion by plaintiff; 11) failing to correct misstatements and false filings and reports made by the SEC following determination by Delaware courts that the company's filings complied with well-established law and legal principles governing beneficial ownership, groups and blockers, the very same rules, principles and advice routinely provided to and followed by Baker Botts very own clients in their public SEC filings and reports (the "Non-Reliance" 8-K and Registration Statement on Form S-1");

12) threatening to embarrass and defame co-counsel unless their extortion claims for payment of $9.6 million were met "within 3 days";

13) threatening by means of interstate commerce and the mails the foregoing and the commencement of litigation, not in advance of any litigation since no lawsuit or action was ever brought by Baker Botts;

14) taking money and property from MabVax under false pretenses to advance their criminal conspiracy while representing the very management of MabVax as to whom they were engaged to conduct an internal investigation, in an unwaivable conflict of interest;

15) advancing the purposes of the enterprise by demanding and receiving payment of millions of dollars from their client in retainers and legal fees while advancing the extortion for the enterprise and in the bankruptcy they themselves were responsible for;

16) suborning perjury before federal and state government officials and agencies; and

17) enticing other participants to join in and take part in the illegal and criminal extortionate activities, to serve as their agent under their control and authorization, conspiring with third-parties to represent them in their extortionate plots, including the law firm Block and Leviton, LLC.

Through these activities, upon information and belief, Shapiro and Baker Botts fed false information to media and bloggers to create the appearance of genuine reporting and investigative research that would support their claims and pressure plaintiff to pay the extortionate demands and to regulators and investigators seeking to induce the initiation of actions so that they would be able to bring suit after the government relying on the government to prove facts in their case forcing settlement, all in continuation of the

enterprises' core plan to harass and intimidate persons associated with Frost investors in which Baker Botts and Shapiro willingly joined.

72.     Baker Botts and Shapiro committed indirect predicate acts by aiding and abetting existing enterprise participants Lee Pederson, Wesley Paul, Daniel Fisher, Teri Buhl, William "Bill" Alpert, David Hansen, Gregory Hanson, Warner Broaddus, Esq. and others in the enterprise's extortionate campaign lodged against Frost and other investors as the targets of their scheme who they called the "Frost gang" lumping plaintiff, an attorney, together with the gang in court proceedings, letter writing, whistleblower claims and articles they commanded labelling him as a criminal. Instead it was the aforementioned participants in this illegal extortion ring that are the bad actors and criminals, who face prosecution for their crimes. Because of ongoing government action involving many of the "gang" investors have been all but unable to defend these false claims in court, media or elsewhere. Although nearly all of the claims brought by the government that involved the small handful of investors that invested in MabVax have been settled with no proceedings and without admitting or denying any allegations, and the government has never once named MabVax or its management in any lawsuit, Shapiro/Baker Botts and Pederson continue their campaign against plaintiff as seen in the Bankruptcy court filings and internet postings and letters from Pederson. There are no proven facts (just allegations) that any improper activities occurred. Because of plaintiff's respect for duties imposed on him by the Rules of Professional Responsibility he has and continues to preserve client confidences and maintain respect for attorney-client privilege. Prior to this complaint, plaintiff has been unwilling to defend himself against the enterprise by speaking with the press. Upon information and belief no

government claim has been or will be made against investors in MabVax the charges resolved through voluntary settlements.

73.    The enterprise's participants named above are the true bad actors engaged in a multi-year, multi-party extortion plot as to which this complaint is the first opportunity to bring them to justice.  It is all but a certitude that litigation against MabVax, Hansen, Hanson, Baker Botts and Block Leviton will ensue and cases will be brought against them by the creditors in bankruptcy and investors once the true facts are known.   Plaintiff himself prior to becoming counsel to MabVax invested $100,000 and maintains additional claims that may be brought against these persons as an investor.

Baker Botts' Game Plan Is the Enterprise's Playbook -

74.    The initial enterprise participants, Lawyer Lee Pederson, lawyer Wesly Paul and Biozone/COCP executive Daniel Fisher, structured an illegal enterprise in 2014 after a dispute arose over payment by Frost and investors.  As chronicled in their own lawsuits, the enterprise was expanded over time and included additional participants.  By 2018 Shapiro, Baker Botts, LLP and the firm Block and Leviton, LLP joined the enterprise.   They adopted tactics, processes, false claims and strategies that were successfully deployed to obtain payments from investors in Biozone/CoCrystal in their effort to extort Kesner.

75.  Pederson in his 2019 complaint[15] states:

"Pederson and Fisher worked together with each other under a general collaborative agreement to help each other seek redress for the harms caused to them by Frost and his gang." Complaint Par 6.

---

[15] *Lee Pederson vs. Phillip Frost, CoCrystal Pharma, Inc., and Daniel Fisher,* (D. Minn) No 19261777 JNE/DTS (July 8, 2019).

"Pederson's and Fisher's desired outcomes included criminal prosecutions and convictions of Frost and his gang members, publication of descriptions of Frost gang frauds and crimes, monetary awards from civil litigation against Frost and other gang members, monetary awards from SEC whistleblower complaints, and court-ordered restitutions from Frost gang members." Id. Par. 8.

"Pederson and Fisher used a three-prong strategy against the Frost gang: (a) civil litigation, (b) supplying Federal law enforcement agents with research, information and evidence about the Frost gang's frauds, and (c) providing inaccurate information to journalists and business writers." Id. Par 9.

"Eventually their joint efforts resulted in active investigations of the Frost gang by the SEC and DOJ (FBI and U.S. Attorney's Office). They also aided a network of journalists and business writers who wrote and published stories about the gang's activities. Fisher's civil litigation against the gang put additional pressure on the gang" Id. Par. 10.

76.     After several years' time, the participants began to war with each other over the spoils of their illegal activities and litigation ensued. A great deal can be learned about the inner workings of the enterprise from this lawsuit:

"The Frost gang saw the joint efforts of Pederson and Fisher as a threat. To ease this threat, they offered Fisher a deal behind Pederson's back. … Frost exerted his control over Defendant COCP to cause COCP to provide a benefit of about $800,000 to Fisher at the expense of COCP shareholders, including Pederson. … The $800,000 benefit to Fisher was intended to buy Fisher's silence and stop Fisher's collaboration with Plaintiff Pederson. …. Fisher went behind Pederson's

back and settled his litigation against the Frost gang with a deal that unjustly enriched Fisher by an amount of about $800,000 while selling out Fisher's promises to Pederson. Fisher profited financially from the deal, and Frost temporarily profited by making Pederson's efforts to seek redress against Frost and his gang much more difficult."

77. Various parties joined the enterprise over time:

"On about October 18, 2014, Fisher announced to his other attorneys that Pederson was a member of Fisher's legal team, along with Wes Paul and Jason Hoffman". Complaint, Par 69. Wes Paul subsequently collaborated with Teri Buhl to defame and disparage plaintiff and promote the writing of false and fictional stories about Kesner lumping him together with the Frost gang repeatedly. "From 2014 to 2017, Pederson and Fisher worked together using the three-prong strategy against the Frost gang. Pederson and Fisher worked on all three aspects of the strategy: (a) civil litigation; (b) press coverage; and (c) Federal law enforcement." Id at 72. Pederson and Fisher began their collaboration with relatively scant material and evidence against the Frost gang, except for what they know about the gang from first-hand experiences regarding frostzone. However, they had both been harmed by the Frost gang, and they shared an absolute certain conviction that Frost and his gang members were fraudsters and criminals."

78. By 2015, the enterprise was in full swing and on March 25, 2015 Fisher wrote:

"The only way for us to come out ahead in this case is to transfer the pain to the defendants. Otherwise, I am wasting my time and money. With the note case, the Frost Group has suffered no pain. Stalling, driving up our costs, and managing a slow moving case is the frost Group's game plan. ... They need to know that we are threat to them since we will cooperate with the SEC and DOJ to damage them. And, we will have the cooperation of the press in researching and publishing the findings. This will allow us to take the offense." Id at 80. "they are extremely cheap, hate to lose, facing criminal prosecution, and adverse PR. As the case progresses, more of their criminal acts will be exposed which is newsworthy." *Id.* at 81.

79. Throughout this period before 2018 Fisher, Pederson and the other members of the enterprise grew. They alleged in the press and to government that plaintiff committed illegalities and included Kesner as a member of the Frost gang, writing stories and articles and threatening to bring to the attention of the agencies more information connecting plaintiff to alleged illegalities and wrongdoing with conclusory statements, defamation and false reporting. Fisher's June 20, 2018 email to Chris Carey reveals the extortion successes that were beginning to emerge and states "Lee is attempting to milk us for money which we don't have. It is my feeling that he feels anxiety about the future of his case which is causing him to scramble to raise money. ... I want to have deniability of communicating with him. But this request is coming from a guy that is nuts, and I have learned to be careful when negotiating with unpredictable crazies. ... Lee's advice was of no use, and it may have been harmful to our case.". Id at 148.

80.    Up to this point the SEC had not yet initiated *any* action against the defendants in the SEC Action, Frost and investors alleged in the SEC Action to have engaged in pump and dump activities.  As noted above, neither Kesner, MabVax, nor any of MabVax's officers or directors were named in any SEC Action, ever.

81.    The unlawful and criminal enterprise in which Shapiro and Baker Botts joined in 2018 had since 2016 been responsible for launching a tirade of defamatory articles that included false and fabricated statements about plaintiff all instigated by Pederson, Fisher, Paul as to which  Buhl, Alpert, Barron's, all became participants in the illegal enterprise by publishing falsities about plaintiff.  They lumped plaintiff together with Frost – Barron's going so far as to report plaintiff as the "center" of the pump and dump ring with an article entitled - "The Lawyer at the Center of SEC Pump-and-Dump Case" is the subject of a pending action in the Southern District of Florida.

82.    Kesner, a lawyer with the firm that had borne his name before the illegal enterprise and conspiracy resulted in his loss of clients, loss of standing in the legal and professional community and employment with the firm, during this period represented various parties in disputes with members of the enterprise (although *never* representing the core target of the enterprise's extortionate threats – Dr. Frost).  He was engaged as counsel and his firm served as opposing counsel to Pederson for Mr. Brian Keller a former collaborator to Fisher in a Minnesota state action brought by Pederson and assisted and investor bringing an action against Buhl.  Kesner also represented two of the investors in Fisher's company as their counsel in an action before the United States District Court in the Northern District of California for breach of a Fisher settlement agreement (which held they had violated terms of settlement when they failed to

withdraw their whistleblower complaints, subsequently learning that the Office of the Whistleblower declined to proceed invoking Pederson's ire – see below).  Plaintiff was attacked with extortion for doing his job as an attorney by the other attorneys involved, first Pederson and Paul then Shapiro, Baker Botts, and Block Leviton.

83.     After learning of the enterprises efforts (likely through reading blogs and postings, letters and articles from Pederson's efforts) and joining the enterprise, Shapiro, MabVax, David Hansen, Gregory Hanson, Block Leviton and others worked closely together with the Biozone/COCP campaign and deployed identical tactics..  They used lies, false statements and misrepresentations as the tools to extort plaintiff in the manner employed against the Frost gang.  Shapiro and Baker Botts formulated their plan and made the following false statements to government officials, their client, and others in an effort to get plaintiff to pay:

A)     Kesner advised MabVax in a manner that favored investors rather than his client in regard to the consent right.  This statement is false.  Kesner refused to provide advice on the consent right.  Rather Mintz Levin served as counsel and advised David Hanson and MabVax on the consent right.  During 2015 Kesner wrote emails and orally informed MabVax that he and his firm declining to provide advice  to MabVax on matters related to the investors.

B)     Kesner was responsible for MabVax issuing $9.6 million in shares to investors.   This statement is false.   Kesner refused to provide advice on negotiation of the settlement, waiver or approvals under the consent right that resulted in issuance of any inducement shares to investors.    Rather, Mintz Levin served as counsel and advised David Hansen and Gregory Hanson on all these

45

matters, on enforceability of the consent after transfer of shares, and all other mattes regarding contractual obligations to the investors, the Oxford financing if is required consent, and issued the legal opinions on such matters.

C)      Kesner was responsible for MabVax failing to report "group" issues in accordance with SEC rules and regulations by asserting in the complaint and to third parties that Kesner failed to advise and disclose that a number of its largest investors … were acting in a manner such that federal regulators would consider the Investors to be an unlawful 'control group' for purposes of the United States securities laws ….  This statement is false.  Kesner never provided advice to the investors or MabVax on beneficial ownership group reporting.  Rather Mintz Levin, Cooley and Schulte served as counsel and advised David Hanson and MabVax on the group reporting.   Reporting protocols were established nearly a year prior to Kesner's engagement, when the Telik transaction was being prepared.  Kesner wrote numerous emails to MabVax to assure MabVax obtained current and accurate facts on which to rely – asking repeatedly to have questionnaires sent to the investors to ascertain their holdings.

D)      Kesner was responsible for MabVax losing the confidence of investors by alleging as follows in the draft complaint … "[N]ow that the frailty of the of the Sichenzia/Kesner 'blocker' firewall has been revealed, MabVax no longer has confidence that the 2,628,766 shares of common stock issued to Investors via preferred share conversions are valid and also cannot be certain its previous reports regarding the number of common shares outstanding are accurate".  Jonathan Shapiro promoted novel never before heard of legal theories that

blockers are ineffective, all the while his firm provided the exact same advice regarding blockers to its other clients, in articles, client memoranda and presentations. MabVax at all times used principles for reporting and blocker provisions that re universal, follow federal law, and have been validated by the Delaware chancery court, specifically as relate to MabVax claims made by Baker Botts/Shapiro.

E)    Kesner was responsible for the decision to disavow three prior years of financial statements and SEC reports and delisting from NASDAQ. Upon learning that MabVax made such filing without his knowledge and consent Kesner and the firm promptly resigned to show their disagreement with the legal advice given by Baker Botts and Mintz. Shapiro stated it was Kesner that required this action given his improper advice. There is no basis for this allegation. MabVax followed the same principles espoused by Baker Botts in its advice to other clients up until the time that Jonathan Shapiro took the unprecedented action of creating new and unknown legal reporting principles for MabVax to follow that aggregated ownership across up to 69 separate investors so that they could not vote together to unseat management in their executive positions through exercise of their rights under state law as shareholders and vote more than 4.9% altogether. Shapiro communicated to numerous people, such as lawyers for the bankruptcy estate after which this lie became part of the bankruptcy estate pleadings and process, that this never before heard of proposition was correct legally, despite such evidence to the contrary that includes a court order in the Delaware chancery court, the failure of the SEC to take any

such position (including before the Delaware chancery court during the pendency of such case), the failure of the SEC to bring any action against MabVax for incorrect filings that were disavowed or against any person who was an investor that adopted such position.

84.     Baker Botts and Shapiro knew of all the aforementioned falsities and are wholly-responsible themselves for the collapse of MabVax, the loss of investor confidence and the ultimate bankruptcy that ensued – the direct result of their illegal enterprise.   During the time prior to Kesner's resignation as counsel, MabVax successfully raised over $30 million in public and private offerings to pursue its business purpose.  Once the enterprise took over the company, and only at that point in time when Baker Botts determined it would be more profitable for Baker Botts, putting their interests before that of their client, did MabVax lose the ability to attract investors, including funding from investors that had repeatedly supported the company's needs over an extended period, and other new investors.  Baker Botts caused MabVax to request voluntary delisting from NASDAQ because it fit well with and supported its narrative that gave credence to its extortion plot.  Shapiro is the brains at the center of the collapse of MabVax as well as the illegal enterprise's planning and execution.  No one but attorney Pederson and the other enterprise members including Shapiro, are responsible as the actors who ushered along and executed the multi-year planning and tactics of the enterprise over a 6 year period, using the people and institutions they recruited to make false statements and file false reports, to propagate their falsehoods in outlets such as court filings and government statements, SEC filings and whistleblower accounts that

provide the conspirators with an imprimatur of truth and merit, despite them being behind each and every utterance.

85.    The draft complaint plaintiff was threatened with aptly chronicles the efforts of the illegal enterprise, which included filing false and misleading whistleblower complaints with the SEC and DOJ implicating plaintiff as a member of the Frost gang, merely for serving as counsel to parties in litigation and as corporate counsel to a multitude of names, culminating with MabVax.    The SEC and DOJ whistleblower complaints by the enterprise, with all their glorious attestations, subsequently were withdrawn or denied by the agency.    "On August 24, 2015 SEC Whistleblower Chief Sean McKessy called Pederson at 2:13 pm central time …. McKessy informed Pederson that the SEC would not take any action based on Pederson's whistleblower complaints." Pederson stated, "This is far from over".    Following such rejection, the enterprise threatened action against SEC Chairman Jay Clayton for corruption in an open letter.[16] Similarly the SEC has brought no action that names MabVax, its managers or plaintiff despite extensive effort and opportunity by Shapiro/Baker Botts. Once Jonathan Shapiro took over from Lee Pederson at the helm of the enterprise to threaten his suit for a $9.6 million extortion he pursued the very same tactics – referrals to DOJ and the SEC, lawsuits, and providing information to reporters, the media, and seeking to put meat on the bones of his false statements through recruiting of other enterprise members such as

---

[16] 23- Pederson v Clayton.  There are many honest and hard-working employees within the SEC. However, I believe that in some instances individuals within the SEC have acted corruptly regarding the lack of enforcement actions against the Frost gang. In other instances, I believe that individuals within the SEC have acted corruptly or arbitrarily and capriciously regarding matters involving the Frost gang. I have written an open letter to SEC Chairman Jay Clayton expressing these concerns. My letter to Clayton can be seen at: https://www.scribd.com/document/433709218/191106-Open-Letter-to-Jay-Clayton I expect that the SEC will not address my concerns in a meaningful way. Therefore, at an appropriate time and after framing the issues with Freedom of Information Act (FOIA) requests, I intend to bring a lawsuit against Chairman Clayton to discover what has been going on inside the SEC with respect to Phillip Frost and his gang.

Block Leviton and the Rosen Law Group to propagate these lies in official court papers that would give the imprimatur of truth and legitimacy. The Rosner Law Group, LLP as counsel to the debtor MabVax, repeated nearly every one of the false and unsupported allegations in numerous bankruptcy filings, letters and motions going so far as to obtain the approval of Block Leviton and Baker Botts as counsel to the bankruptcy estate to sue investors and plaintiff. This fraud should not be allowed by The Rosner Law Group, LLP, as it is inconsistent with the duties owed such firm to the Bankruptcy Court, creditors and others with interest in the outcome of the bankruptcy. These facts should be brought to immediate attention of the Court.

86. Plaintiff has not been sued by the SEC or DOJ nor accused of any illegal or improper acts at any time while Baker Botts and Block Leviton continue their quest to divert attention away from MabVax managers to plaintiff. In 2018, as described in the introductory paragraphs to this complaint, additional participants joined the enterprise. Shapiro, Baker Botts, LLP, other members of their firm, Hansen, Hanson, Jason Leviton, Esq., Joel Fleming, Esq. Block and Leviton, LLP, and other members of these firms, with threats should $9.6 million not be paid. Through the filing of this complaint all of such parties were functioning as continuing unit. The enterprise in this case was organized for specific purposes – to extort plaintiff with threats to defame, injure and embarrass for financial gain. The members of the enterprise are related (attorney/client, researcher/writer, employee/employer, principal/agent). They worked together between 2014- 2020 to pursue and achieve a common purpose by unlawful means. Their actions are continuing.

Baker Botts and Jonathan Shapiro's Rico Violations – 18 U.S.C Section 1962(c)

87.     Kesner has been injured in his business and property by reason of Baker Botts and Shapiro's multiple violations of Title 18 U.S.C. § 1962, described above. Baker Botts and Shapiro engaged in at least two acts of racketeering activity (acts or threats of extortion chargeable under New York law and punishable by imprisonment for more than one year, mail fraud and wire fraud, and interference with commerce by extortion or threats to do so in violation of the Hobbs Act) as well as making false statements and suborning perjury, one of which occurred after the effective date of Part 1, Chapter 96 of Title 18 of the United States Code and the last of which occurred within ten years after the commission of a prior act of racketeering activity. Baker Botts and Shapiro operated or managed an enterprise through a pattern of racketeering activity that caused Kesner concrete financial loss and other harm. Baker Botts and Shapiro knowingly and purposefully adopted, implemented, controlled, conducted and participated a scheme or artifice, the direct purpose of which was to extort money or property from Kesner and his firm. The business of the enterprise – extortion – is primarily unlawful. The criminal activity is continuous because extortion was the regular way of operating the business. Baker Botts and Shapiro's criminal activity by its very nature projects into the future. Baker Botts and Shapiro's racketeering activity (including their own fraudulent concealment, securities fraud, conspiracy with MabVax management, and extortion during the ongoing SEC investigation), its relatedness, breadth and the period of time over which Baker Botts and Shapiro persisted with the scheme, is such that there is a threat that it will continue indefinitely and be repeated in the future.

88.     As a direct and proximate cause of Baker Bott's and Shapiro's violations of Title 18 U.S.C. § 1962 (c), Kesner suffered injury and loss of property in the amount of $10,000,000.

89.     Baker Botts conspired with other participants in the enterprise in violation of 18 U.S.C. § 1962 (d) to violate 18 U.S.C. § 1962 (c).

90.     In accordance with 18 U.S.C. § 1964(c), Kesner seeks threefold the damages he has sustained, the costs of this suit, and reasonable attorney's fees incurred.

91.     In accordance with 18 U.S.C. § 1964(d), Kesner seeks an injunction against all participants in the enterprise to prevent and restrain further violations of 18 U.S.C. § 1964(c).

### SECOND CAUSE OF ACTION –
### DECEPTIVE ACTS AND PRACTICES IN BUSINESS

92.     Kesner restates paragraphs 1 through 91 of this Complaint, and incorporates them herein by reference.

93.     Baker Botts and Shapiro's publication of defamatory falsehoods about Kesner and their extortion of Kesner constitute deceptive acts and practices in the conduct of business, trade or commerce.  Baker Botts and Shapiro's actions violate General Business Law § 349(a) and are unlawful.

94.     Baker Botts and Shapiro's willful methods, acts, or practices were consumer-oriented and misleading.  Baker Botts and Shapiro's conduct involved an extensive extortion scheme involving the dissemination of information to the public. Baker Botts and Shapiro's actions have the potential to affect consumers at large.

95.     Kesner suffered injury and loss as a result of acts or practices that violate General Business Law § 349.

96.     Kesner brings this action against Baker Botts and Shapiro pursuant to General Business Law § 349(a) to recover to actual damages, plus attorney's fees and court costs, in the sum of $10,000,000.00 or such other amount as is determined by the Jury. In addition to damages, attorney's fees and costs, Kesner seeks a declaratory judgment that Baker Botts and Shapiro's acts and practices violate § 349(a) and an injunction to prevent Baker Botts and Shapiro from violating the Act in the future.

### THIRD CAUSE OF ACTION –
### TORTIOUS INTERFERENCE

97.     Kesner restates paragraphs 1 through 96 of this Complaint, and incorporates them herein by reference.

98.     At the time Baker Botts and Shapiro extorted Kesner and SRFK, Kesner had valid and enforceable contracts and existing business expectancies in his partnership with SRFK and his relationships clients. Kesner had a reasonable expectation of earning substantial income from those business relationships.

99.     Baker Botts and Shapiro knew about Kesner's interest in SRFK and his law practice, contracts and business expectancies.

100.    Baker Botts and Shapiro intentionally interfered with Kesner's property rights and business expectancies by, *inter alia*, devising, aiding, abetting and actively participating in the scheme to extort money or property from Kesner and to injure him in his business and reputation.

101.    Baker Botts and Shapiro's improper methods, actions and practices were, *inter alia*, defamatory, unethical, oppressive, over-reaching, fraudulent, hostile, sharp, and criminal. Baker Botts and Shapiro's interference was completely unjustified.

102.    As a direct result of Baker Botts and Shapiro's tortious interference with Kesner's contracts and business expectancies, Kesner suffered damage and incurred loss, including, without limitation, injury to his business, loss of clients, damage to his reputation, prestige and standing, attorney's fees, court costs, and other damages in the sum of $10,000,000.00 or such other amount as is determined by the Jury.

### FOURTH CAUSE OF ACTION –
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

103.    Kesner restates paragraphs 1 through 102 of this Complaint, and incorporates them herein by reference.

104.    Baker Botts and Shapiro's conduct, detailed above, was intentional, reckless, concerted, criminal and deliberately violative of applicable Rules of Professional Conduct.  They engaged in a series acts that, taken together, constitute extreme and outrageous behavior.  They purposefully initiated a campaign to extort money or property from Kesner, by, *inter alia,* maliciously threatening to defame him with scandalous accusations of criminal conduct, destroy his securities law practice, and turn him over to DOJ and the SEC.  In spite of their knowledge that Kesner had engaged in no wrongdoing of any kind, Baker Botts and Shapiro proceeded with their extortionate plan.  As part of that plan, they directed MabVax to make untrue and material misleading statements to the SEC, and assisted their client in filing multiple fraudulent reports with the SEC over a long period of time.  Defendants' conduct was flagrant and heartless.

105.    Baker Botts and Shapiro's actions offend against generally accepted standards of decency and morality and are atrocious and utterly intolerable.  They are attorneys.  They knew that their illegal actions would cause severe emotional distress.

106.    Their outrageous conduct caused Kesner to suffer severe emotional distress, extreme fear and panic.

107.    Baker Botts and Shapiro's misconduct constitutes intentional infliction of emotional distress.

108.    As a direct result of Baker Botts and Shapiro's misconduct, Kesner suffered damage and incurred loss, including, without limitation, pain and suffering, physical injury, severe emotional trauma, insult, embarrassment, humiliation, public ridicule, anguish, stress and anxiety, injury to reputation, special damages, medical expenses, attorney's fees, costs and out-of-pocket expenses in the sum of $10,000,000.00 or such greater amount as is determined by the Jury.

### FIFTH CAUSE OF ACTION – PRIMA FACIE TORT

109.    Kesner restates paragraphs 1 through 108 of this Complaint, and incorporates them herein by reference.

110.    In their attempts to extort payment of $9,600,000 from Kesner and SRFK, Baker Botts and Shapiro intentionally inflicted harm on Kesner without excuse or justification.  Their statements and actions were motivated by disinterested malevolence, malice and the desire to extort a settlement from Kesner without litigation.

111.    As a direct result of Baker Botts and Shapiro's actions, Kesner suffered special damages and incurred loss, including, without limitation, injury to his business and property, loss of clients, damage to his reputation, prestige and standing, attorney's fees, court costs, and other damages in the sum of $10,000,000.00 or such other amount as is determined by the Jury.

## SIXTH CAUSE OF ACTION –
## VIOLATION OF JUDICIARY LAW § 487

112.    Kesner restates paragraphs 1 through 111 of this Complaint, and incorporates them herein by reference.

113.    In the draft complaint, Baker Botts and Shapiro manufactured and repeated multiple patently false statements as a part of a scheme to extort a settlement from Kesner and SRFK.

114.    Baker Botts and Shapiro are guilty of deceit[17] or collusion with the intent to deceive Kesner, SRFK and the Superior Court for the State of California.  Baker Botts and Shapiro's deceit and collusion was both directed at the Court and it occurred during the course of a judicial proceeding.

115.    Baker Botts and Shapiro's misrepresentations, deceit, and collusion constitutes misconduct under New York Judiciary Law § 487.

116.    As a direct and proximate result of Baker Botts and Shapiro's misconduct, Kesner suffered substantial injury and loss of property, including the payment of attorneys' fees and costs, pain and suffering, physical injury, severe emotional trauma, insult, embarrassment, humiliation, public ridicule, anguish, stress and anxiety, injury to reputation, special damages, medical expenses, costs and out-of-pocket expenses in an amount to be determined by the Jury.

---

[17]    "Deceit" means "the act or process of deceiving (as by falsification, concealment, or cheating)." *Kawashima v. Holder*, 132 S.Ct. 1166, 1172 (2012) (citing Webster's Third New International Dictionary 584 (1993)); *see id. Amalfitano v. Rosenberg*, 428 F.Supp.2d 196 (S.D.N.Y. 2006) (adopting definition from Black's Law Dictionary (8th Ed. 2004) ("Deceit" includes: (1) The act of intentionally giving a false impression … (2) A false statement of fact made by a person knowingly or recklessly (*i.e.* not caring whether it is true or false) with the intent that someone else will act upon it … (3) A tort arising from a false representation made knowingly or recklessly with the intent that another person should detrimentally rely on it.).

117.     In accordance with New York Judiciary Law § 487, Kesner seeks treble damages to punish Baker Botts and Shapiro and to deter them from betraying their special obligation to protect the integrity of the Court and foster their truth-seeking function.

Kesner alleges the foregoing based upon personal knowledge, public statements of others, and records in his possession.  Kesner believes that substantial additional evidentiary support, which is in the exclusive possession of Baker Botts, Shapiro, MabVax, and their agents and other third-parties, will exist for the allegations and claims set forth above after a reasonable opportunity for discovery.

Kesner reserves the right to amend this Complaint upon discovery of additional instances of the Defendants' defamation and wrongdoing.

## CONCLUSION AND REQUEST FOR RELIEF

WHEREFORE, Harvey J. Kesner respectfully requests the Court to enter Judgment against Baker Botts and Shapiro, jointly and severally, as follows:

A.     Compensatory damages in the amount of $10,000,000.00;

B.     Threefold damages in the sum of $30,000,000.00;

C.     Punitive damages in the amount of $5,000,000.00 as a result of the Defendants' specific intent to harm Kesner and the actual harm inflicted on Kesner;

D.     Prejudgment interest on the principal sum awarded to Plaintiff by the Jury from August 17. 2018 to the date of Judgment at the maximum rate allowed by law;

E.     Postjudgment interest at the maximum rate allowed by New York law;

F.     Costs and such other relief as is just and proper.


**TRIAL BY JURY IS DEMANDED**

DATED:        January 21, 2020


HARVEY J. KESNER


By: ___/s/ Robert C. Buschel_____
        Robert C. Buschel, Esq.
        Florida Bar No. 0063436
        BUSCHEL GIBBONS, P.A.
        One Financial Plaza
        100 S.E. Third Avenue, Suite 1300
        Fort Lauderdale, Florida 33394
        Tele: (954) 530-5301
        **Buschel@BGlaw-pa.com**
        *(Application for Admission Pro Hac Vice*
             *To be File).*

        Steven S. Biss (VSB # 32972)
        300 West Main Street, Suite 102
        Charlottesville, Virginia 22903
        Telephone:     (804) 501-8272
        Facsimile:      (202) 318-4098
        Email:          **stevenbiss@earthlink.net**
        *(Application for Admission Pro Hac Vice*
             *To be Filed)*

        *Counsel for the Plaintiff*